Whitney Ladell **BLAKE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 06–96–00029–CR.

Court of Appeals of Texas,
Texarkana.

Argued April 8, 1997.

Decided April 23, 1997.

David C. Read, Michael D. Mosher & Associates, Paris, for appellant.

Deane A. Loughmiller, Assistant County Attorney, Jeff Starnes, Assistant District Attorney, Paris, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Whitney Ladell Blake was convicted after a jury trial of the offense of theft of property over $20,000.00, enhanced by two prior convictions. The jury assessed punishment at life imprisonment. The appellant brings one point of error, contending that the trial court erred by excluding witness Daron Morgan from the accomplice witness instruction. We affirm.

The State presented evidence that a dark blue 1989 Chevy pickup truck was stolen from Ted Brown on the evening of September 5, 1994. Brown left the keys in the truck when he stopped to go into his place of business. When he returned to the parking lot, the truck was gone. The truck was valued at approximately $8,500.00. It was found abandoned a few days later.

The State also presented evidence that a 1994 white Mercury Cougar was stolen from Kennedy Ford–Lincoln–Mercury (Kennedy Ford) on September 12, 1994. Employees at the dealership had left the keys in the Cougar, presumably to expedite showing the car to customers. The Cougar was valued at $17,845.00. It was also found abandoned soon after it was stolen.

The State then presented the testimony of six witnesses linking the appellant to the thefts. Raynold Allen Smith testified that he and the appellant, along with Tajuan Morgan and Damien Council, met at the appellant's house on September 5, 1994. The appellant suggested that the group steal something. Everyone agreed that this was a good idea, so the group set out with the intent to steal. They split up, with Smith and the appellant going in one direction and Council and Tajuan Morgan going in another. Eventually, Smith and the appellant saw a blue Chevy pickup truck. The appellant pointed out that the keys were in it and suggested that they take the truck. The appellant waited around the corner while Smith started the truck. Smith drove around the corner and picked up the appellant. They drove around that night. On subsequent nights, Smith drove around in the truck until he abandoned it.

A few nights later, Smith was at the appellant's house again, along with the appellant, Daron Morgan, and Tajuan Morgan. Daron Morgan brought the keys to the Cougar to the appellant, who gave them to Smith. The appellant suggested that the group take the Cougar. They went to Kennedy Ford, where Daron Morgan got scared and left the group. Smith took the car and picked up the appellant and Tajuan Morgan at another location. They drove around for awhile, then parked the car. Smith returned to the car later that night and discovered that all the windows were broken out of it. He therefore abandoned the car.

Tajuan Morgan verified that he was at the appellant's house on September 5, 1994, along with Smith, Council, and the appellant. He confirmed that the appellant suggested stealing something and that the four men left the house, then split up, with Smith and the appellant going off alone. The next morning, Smith came to Morgan's house and told Morgan that he and the appellant had stolen a truck the night before. Morgan also testified that he was at the appellant's house on September 12, 1994. He testified that he walked to Kennedy Ford that night, along with the appellant and Smith. Morgan and the appellant waited in an adjacent lot while Smith got the car. Smith returned to pick up Morgan and the appellant. They rode around for a while in the car.

Council verified the participants in the September 5, 1994, meeting, the intent to steal a car, and the subsequent split-up of the group. He also testified that on the next day, Smith told him that he and the appellant had stolen a truck the night before. Smith asked Council if he wanted to go riding, but Council demurred because the truck was stolen.

Daron Morgan, who was twelve years old at the time of the offenses, testified that he was at home on the evening of September 5, 1994, when Smith knocked on his window. Smith asked Morgan if he wanted to go riding in a truck. Smith said that the appellant was with him. Morgan started to go, but he changed his mind when his mother woke up. The next day, Smith told Morgan that the truck was stolen. A few days later, the appellant and Morgan were walking by Kennedy Ford. They decided to take the keys from a car. The appellant acted as a lookout, while Morgan took the keys from the Cougar. As they walked away, Morgan handed the keys to the appellant. They walked to the appellant's house. There they waited until night, when they returned to take the Cougar. At that point, Morgan returned home. The next day, Smith told Morgan that he had the car. Ladarrius Lamont Nelson testified that he overheard Smith and the appellant talking one evening late in the summer of 1994. He heard Smith tell the appellant, "I keep one set of keys and I give you the other." Nelson thought this was odd because neither man owned a car. Afterward, Nelson saw Smith walking toward a blue Chevy truck.

Thomas Moten testified that he saw Smith and the appellant driving around in a white Cougar in September 1994.

The defense counsel vigorously cross-examined the State's witnesses, mostly concerning their prior troubles with the police. The defense presented only one witness-A. J. Mason-who testified that one evening he sat on a porch with the appellant from five o'clock in the evening until three o'clock in the morning. At one point, Smith pulled up in a white Cougar. The appellant went over to the Cougar to talk to Smith. Apparently, Smith left without the appellant. Although Mason could recall that this incident happened in the summer, he was not sure in what year it occurred.

■ At trial, the judge instructed the jury not to convict based upon uncorroborated accomplice testimony. The instruction listed Tajuan Morgan, Council, and Smith as accomplices. The appellant objected that Daron Morgan was not listed, but the trial court overruled the objection.

TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979) provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." "An 'accomplice witness' is

someone who has participated with another before, during or after the commission of a crime...." *Villarreal v. State,* 708 S.W.2d 845, 847 (Tex.Crim.App.1986).

The appellant concedes that under current case law, Daron Morgan was not an accomplice witness. Daron Morgan fell under the age of criminal responsibility and could not be certified as an adult. TEX.PE- NAL CODE ANN. § 8.07(a) (Vernon Supp.1997); TEX.FAM.CODE ANN. § 54.02(a)(2) (Vernon 1996). A minor who cannot be prosecuted for an offense is not an accomplice witness. *Villarreal,* 708 S.W.2d at 847–49. The appellant argues that the minor accomplice rule does not make sense. The appellant extensively reviews the history of this rule and argues that it was conceived to facilitate the conviction of homosexual pedophiles upon the testimony of their child victims. He argues that the current extensive application of the rule to every type of criminal case does not jibe with the accomplice witness rule. The appellant's arguments are unavailing because we are bound by the precedent of the Texas Court of Criminal Appeals. Therefore, the judgment of the trial court is affirmed.

GRANT, Justice, concurring.

The time is past for treating juvenile proceedings as if they were civil matters. This has been recognized by the Austin Court of Appeals in *In re M.S.,* 940 S.W.2d 789 (Tex. App.-Austin 1997, n.w.h.), by the San Antonio Court of Appeals in *In re M.R.R.,* 903 S.W.2d 49 (Tex.App.-San Antonio 1995, no writ ), and by the United States Supreme Court in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

One of the main thrusts behind the rule requiring corroboration is based upon a party involved in a criminal act wanting to shift most of the blame to the other party to lessen or avoid his own punishment. To theorize that juveniles are not actually punished, and therefore this principle should not apply, is not a realistic look at the system. It is a legal fiction, or as the United States Supreme Court said in *In re Winship,* a civil "label of convenience." Ask a juvenile ordered to confinement if he is being punished or is merely undergoing rehabilitation, and he is likely to explain to you that he is being

punished. The same reasons exist in requiring corroboration when the testifying party involved in the crime is a juvenile as exist when the testifying party is an adult.

We are bound by the ruling of the Texas Court of Criminal Appeals on this matter, and therefore, I must concur with the conclusion reached by the majority. I would, nevertheless, urge the Court of Criminal Appeals to take a realistic look at its application of this rule on corroboration.